UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES REINSURANCE
(UK)PLC,

       *Plaintiff,*                          CASE NO. 08-60399-CIV-JORDAN

            v.                       Magistrate Judge Torres

ELAINE Y. ROSIN et al,           AFFIDAVIT IN SUPPORT OF
                                  PLAINTIFF'S AND THIRD PARTY
                                  DEFENDANT'S MOTIONS FOR
        *Defendants,*            SUMMARY JUDGMENT

_____/

COUNTY OF WEST YORKSHIRE     )
                          )   ss:
UNITED KINGDOM             )

        B.A. Usher, being duly sworn, deposes and says:

    1.   My name is B.A. Usher, and I reside at 16A Newfield Drive, Menston, Leeds, West Yorkshire LS296 JQ in the United Kingdom.  Beginning in 1993, I was employed by T.L. Dallas, and then at T.L. Dallas (Special Risks) Ltd., ever since that company's formation in 1999. As Managing Director for T.L. Dallas (Special Risks) Ltd., I was responsible for the entire department and for all personnel who are involved in the yacht & pleasure boat account, and the small commercial craft account, which the company wrote on behalf of Great Lakes Reinsurance (UK) plc during the time that Policy No. 200/658/91059 was issued to Elaine Rosin.

    2.   In 2008, the principals in Osprey Special Risks Ltd. acquired the interests of the T.L. Dallas Group in an amicable buy-out and Osprey now functions as a new and independent entity

1

which is the exclusive marine underwriting agency offering marine insurance policies on behalf of Great Lakes Reinsurance (UK) plc.

3.   My duties both at the present time with Osprey Special Risks Ltd. and also with T.L. Dallas (Special Risks) Ltd., included making the final determination as to whether and on what terms marine insurance coverage will be agreed to with respect to any particular risk that is submitted by a broker to T.L. Dallas (Special Risks) Ltd.

4.   I have inspected and I am quite familiar with the application materials which are contained in the Underwriting File which we maintain here in Ilkley, which materials were provided to us via USI Florida/Kolisch Insurance. The latter was the surplus lines broker, specializing in marine insurance, which was involved in this particular risk. The office of USI Florida/Kolisch Insurance that we were dealing with in this particular matter is located in Coral Gables, Florida.

5.   I have also had occasion to review certain investigation reports which were provided to my marine claims manager by Nautilus Investigations after the November 3, 2007 incident, in which the vessel was reported to have sunk and to have been declared a constructive total loss, after it had sustained damage while it was being operated not by Elaine Rosin but by her son, Paul Rosin. In order to prepare this sworn affidavit, I have also had occasion to read the transcripts of the recorded statements provided to Nautilus Investigations by Elaine

2

Rosin and Paul Rosin as part of the post-incident investigation, as well as the transcripts of the depositions that Elaine Rosin and Paul Rosin gave on January 12, 2009.

6.    My affidavit is based upon my review of these documents and also upon my personal knowledge of our underwriting practices. It is also based upon my direct personal involvement in and my consequent first-hand knowledge and review of Ms. Rosin's insurance application documents.

7.    At all times relevant hereto, T.L. Dallas (Special Risks) Ltd. was the authorized underwriting and claims handling agent for Great Lakes Reinsurance (UK) plc as regards Policy No. 200/658/91059.  As the authorized underwriting agent, T.L. Dallas (Special Risks) Ltd.'s role was to receive and to then evaluate applications for the marine insurance coverage that we were authorized to write.  T.L. Dallas (Special Risks) Ltd. would then either issue a quote to the surplus lines broker on the basis of the information contained in the application and any supporting materials, or else T.L. Dallas (Special Risks) Ltd. would refuse to issue a quote and would thereby reject an application for marine insurance coverage.

8.    As I thought I had explained slowly and carefully to Ms. Rosin's attorney at the time of my own deposition taken on February 3, 2009, T.L. Dallas (Special Risks) Ltd. is not and never has been an insurance company of any kind. In this particular matter and in the many thousands of other instances in

which it has issued policies of marine insurance, T.L. Dallas (Special Risks) Ltd. has acted as a managing agent for the actual marine insurance company that is bound on the risk. Great Lakes Reinsurance (UK) plc is the insurance company on Policy No. 200/658/91059, with T.L. Dallas (Special Risks) Ltd. acting solely as that company's marine underwriting and claims manager for this particular variety of marine business.

9. In connection with T.L. Dallas (Special Risks) Ltd.'s contractual undertaking to act as Great Lakes Re's marine underwriting manager, applications would normally be forwarded to T.L. Dallas (Special Risks) Ltd.'s offices via e-mail and telefax from the various surplus lines insurance brokers located all around the United States with which we had established business relationships.

10. As one of the largest and busiest yacht and pleasure boat insurance facilities in the United Kingdom, offering marine insurance coverage with Great Lakes Reinsurance (UK) plc, amongst others, T.L. Dallas (Special Risks) Ltd. in early 2007 maintained relationships with as many as one hundred sixty-five (165) different surplus lines insurance brokers located throughout the United States.

11. The role of these surplus lines insurance brokers is to submit to us applications and requests for quotations on prospective policies of marine insurance. These brokers will normally have in their possession the policy language that our

insurance policies will contain, and they will also have our application forms. The applications are completed sometimes with the assistance of the broker, and then via the broker are e-mailed or faxed to our facility in the United Kingdom for my review and underwriting decision.

12.    In this particular matter, on January 31, 2007 Ana Maria Schultz of USI Florida/Kolisch e-mailed to us what appeared to be a fully completed Yacht Application form, signed by Elaine Rosin and dated January 10, 2007. Ms. Schultz was seeking a Quotation for Ms. Rosin, identified on the document as the owner and also the sole prospective operator of a 2003 36 ft Doral power vessel vessel, and it was on the basis of the information disclosed in this signed document that T.L. Dallas (Special Risks) Ltd. made the decision as to whether or not we would respond with a quote for a particular type of policy, what that quote or premium will be, the type of policy that we might offer, and other terms.

13.    A request for a Quotation such as the one that was submitted by Ana Maria Schultz is an inquiry from a broker with regard to whether T.L. Dallas (Special Risks) Ltd. would be willing to offer a policy of marine insurance on behalf of Great Lakes Reinsurance (UK) plc, and if so, the most salient and basic terms for that policy and the premium that would be charged.  The Quotation request invariably contains the basic material facts pertaining to the risk being proposed, such as the identity of the

prospective assured(s), the latter's relevant experience and prior vessel ownership, a description of the vessel including its value, the geographical limits within which the vessel is going to be operated, etc.

14. Such Quotations are routinely solicited from T.L. Dallas (Special Risks) Ltd. by brokers, quite frequently using only a partially completed application form on which the broker has written down the material information obtained as a result of his communications with the prospective assured. As noted, such requests for a Quotation will commonly contain the basic material facts pertaining to the risk being proposed, such as the identity of the prospective assured(s), the latter's relevant experience and prior vessel ownership, a description of the vessel including its value, the geographical limits within which the vessel is going to be operated, etc.

15. At the time of the submission of Ms. Rosin's application and supporting materials, in January of 2007, T.L. Dallas (Special Risks) Ltd. had established and was enjoying a relationship with USI Florida Kolisch Insurance in which the Coral Gables office of that surplus lines broker was sending us a regular flow of applications from individuals such as Ms. Rosin.

16. USI Florida/Kolisch did not at any time act as an agent for T.L. Dallas (Special Risks) Ltd. or for Great Lakes Reinsurance (UK) plc. USI Florida/Kolisch has never at any time had any authority to bind either T.L. Dallas (Special Risks) Ltd.

or any of the various marine insurance companies and/or underwriters on behalf of which T.L. Dallas (Special Risks) Ltd. was authorized to act.

17.   No surplus lines broker is or ever has been authorized to bind either T.L. Dallas (Special Risks) Ltd. or Great Lakes Reinsurance (UK) plc in any manner.  Authority to bind on any prospective risk must come from T.L. Dallas (Special Risks) Ltd. and this authority is transmitted to the surplus lines broker in the U.S. only after we have reviewed and approved the application submissions which have been provided to us by these entities.

18.   In this particular matter, the request for a quotation and the application for Ms. Rosin's marine insurance policy were procured by and were submitted to us by Ana Maria Schultz. As stated above, USI Florida/Kolisch Insurance was a duly licensed surplus lines broker doing business in Coral Gables, Florida and specializing in obtaining marine insurance coverage by dealing directly with individual clients such as Elaine Rosin. Marine insurance brokers acting in the manner of USI Florida/Kolisch, which actually have a direct relationship with the individual client-assured are commonly referred to as "retail brokers." Other marine insurance brokers who work with or who assist retail brokers in approaching certain specialized markets are commonly referred to as "wholesale brokers."

19.   In this particular matter, the only broker that was involved in obtaining insurance or assisting Elaine Rosin was USI

Florida/Kolisch. As noted, the latter was a duly licensed surplus lines broker authorized under Florida state law to export business such as Elaine Rosin's and was able to approach the T.L. Dallas (Special Risks) Ltd. yacht facility directly.

20. There was never any agreement between T.L. Dallas (Special Risks) Ltd. and USI Florida/Kolisch, beyond agreement that the broker would refer business to us if they deemed our market appropriate for their client. Like every other surplus lines broker, USI Florida/Kolisch was completely free to approach any other markets with which they were doing business in an effort to obtain satisfactory or even superior terms for the insurance coverage being sought on behalf of their client.

21. The only thing that USI Florida/Kolisch was in fact authorized to do in the instant matter was to forward to T.L. Dallas (Special Risks) Ltd. a request for quotation, along with a fully completed application form and. This always critical document was indeed provided to us and review of the material information contained in the completed and signed application form resulted in the subsequent issuance of Policy No. 200/658/91059.

22. As stated herein, on January 31, 2007 we received via e-mail the fully completed, signed and dated Yacht Application form with a request from Ana Maria Schultz that we respond by providing a Quotation. In addition to identifying Elaine Rosin as the owner of a 2003 36 ft Doral motor vessel, the Yacht Application form disclosed certain preliminary information which

included the original $260,000.00 purchase price and the $175,000.00 proposed insured value of the vessel; its prospective mooring location at the Yacht & Racquet Club of Boca Raton. It was represented to us that Elaine Rosin was a medical doctor, possessing 25 years of experience in the operation of boats, with 25 years of boat ownership, and with only a single minor loss in 2005 related to Hurricane Wilma. It was represented that Elaine Rosin had attended classes sponsored by the Pompano Power Squadron, and that she had absolutely no history of violations or suspensions of any kind over the previous five (5) year period of time. No other owners and no other operators were disclosed in this document that came from USI Florida/Kolisch. This information was sufficient to allow us to respond the very next day, February 1, 2007, with a Quotation indicating the terms on which T.L. Dallas (Special Risks) Ltd. would be willing to issue a policy of marine insurance to Elaine Rosin.

23. That Quotation clearly identified Great Lakes Reinsurance (UK) plc as the prospective insurer with respect to both the Hull coverage and the P&I coverage. Again, I thought that I had explained slowly and carefully to Ms. Rosin's attorney at the time of my own deposition taken on February 3, 2009 that the Quotation had so very clearly and indisputably illustrated that Great Lakes Reinsurance (UK) plc was to be the insurer. It should be noted that the terms "Hull" and "P&I" correspond to what in the non-marine context might be termed first party coverage and third

9

party coverage, respectively.

24. The February 1, 2007 Quotation was e-mailed to Ana Maria Schultz by Neil R. Burton, an assistant underwriter working under my direct supervision, and it indicated that it would be subject to acceptance for a period of 60 days. The Quotation named Elaine Y. Rosin as the assured, described the vessel and its insured value, also confirming the amount of liability coverage that had been sought, setting the premium at $3,605.00. The Navigational Limits were set as "East Coast USA, Gulf of Mexico, Florida & the Bahamas – Not to exceed 75 miles offshore." It was stated that we required a photograph of the vessel and submission of a satisfactory application form. The Quotation stated quite clearly that it was "[a]s per TLD/5/PPO."

25. After receiving our Quotation, a request to bind the insurance was received thereafter from Ana Maria Schultz on February 8, 2007, and in response to this request to bind that had come from the assured's broker, T.L. Dallas (Special Risks) Ltd. sent an e-mailed Cover Note to Ana Maria Schultz for Policy No. 200/658/91059. This was then followed by the actual Cover Note for Policy No. 200/658/91059 which was subsequently sent to USI Florida/Kolisch.

26. No application other than the one purported to have been signed by Elaine Rosin, dated January 10, 2007, was ever provided to T.L. Dallas (Special Risks) Ltd. As noted, that application identified Ms. Rosin as the sole operator of the

insured vessel, making no reference whatsoever to Paul Rosin or to any other persons.

27. Following submission of the claim seeking payment of the full insured value of the vessel insured under Policy No. 200/658/91059, an investigation was caused to be carried out by T.L. Dallas (Special Risks) Ltd.'s Claims Manager. The claim for coverage under Policy No. 200/658/91059 was ultimately rejected as a result of what was learned in the course of the said investigation.

28. In both his recorded statement and then again most recently in his deposition, Paul Rosin has admitted that he was operating the vessel at the time of the November 3, 2007 incident, having driven the vessel owned by his mother from his own residence in Dania to the Govan Marine yard located in Fort Lauderdale. On the way to the Govan Marine yard, while the vessel was in a canal, with Mr. Rosin at the helm, the vessel is alleged to have struck a rock or some other underwater obstruction which bent the rudder. After Mr. Rosin tied up the vessel at the yard, it sank as a result of the damage sustained while being operated by Paul Rosin.

29. As noted above, the only person named or disclosed on the application that was submitted in order to obtain Policy No. 200/658/91059 was Elaine Y. Rosin. No other person, and certainly not Paul Rosin, was ever disclosed to us or named as an operator of the vessel.

11

30. Plaintiff's Policy No. 200/658/91059 contains the following language which bears directly on the issue of coverage for the incident which is alleged to have occurred on November 3, 2007:

1.    DEFINITIONS

* * * * * *

c)    "Covered person" means you, or any person detailed on your application form which has been submitted and approved by us...

* * * * * *

2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insurance agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insurance agreement.

* * * * * *

9.    General Conditions & Warranties

* * * * * *

w).   It is warranted that the scheduled vessel will be operated only by covered persons.

31. The claim was denied because Paul Rosin was not a covered person as defined in the policy, and yet it was Paul Rosin

who was operating the insured vessel at the time of the November 3, 2007 incident. This fact constitutes a clear breach of the express warranty set forth in the policy providing that the insured vessel would be operated only by covered persons.

32. In addition, once it had been made clear that the vessel was being operated by Paul Rosin, and that Mr. Rosin had not been disclosed as an operator and was not a covered person under the policy, we caused an investigation to be conducted into Mr. Rosin's background. As Mr. Rosin admitted in his deposition, he has at least one (1) felony conviction on his record, and on September 2, 2001 was charged with and ultimately paid a fine for reckless operation of a watercraft. In March of 2002, Mr. Rosin was sentenced on the latter charge to a year of probation and 30 days of confinement, with the 30 days of confinement suspended. Investigation also disclosed that Mr. Rosin has a history of arrests for reckless driving and driving under the influence, as well as matters related to allegations of domestic violence.

33. The post-incident investigation compelled me to conclude that Paul Rosin would not have been acceptable as an operator of the vessel insured under Policy No. 200/658/91059, since his background makes it quite apparent that the vessel would be exposed to such an increased and unacceptable level of risk anytime he would have been operating the vessel. Our investigation confirmed us in our decision to deny the claim on the basis of the self-evident breach of the express warranty stating that only

13

covered persons would operate the vessel.


FURTHER YOUR AFFIANT SAYETH NAUGHT

B. A. USHER


Sworn before me this __19th__
day of February 2009 at Ilkley
in the county of West Yorkshire


_____
A solicitor

MAXINE S WORRALL
PARTNER
Walker Foster
27 Riddings Road
Ilkley
West Yorkshire


14