UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO.  08-CV-60399-Jordan
Magistrate Torres

GREAT LAKES REINSURANCE (UK),
PLC,

                Plaintiff,

vs.

ELAINE Y. ROSIN and BANK OF THE WEST,

                Defendants.

_____/

**DEFENDANT/COUNTERPLAINTIFF ROSIN'S
RESPONSE and MEMORANDUM OF LAW
IN OPPOSITION TO GREAT LAKES'S MOTION for SUMMARY JUDGMENT**

Defendant/Counterplaintiff ELAINE Y. ROSIN, M.D. (hereinafter "ROSIN") files this

Response and Incorporated Memorandum of Law in opposition to the Motion for Summary

Judgment (D.E. 18) of Plaintiff GREAT LAKES REINSURANCE (UK), PLC (hereinafter

"GREAT LAKES"), and its Memorandum of Law (D.E. 22) and states:

In the instant action, many genuine issues of material fact preclude entry of summary

judgment in favor of GREAT LAKES.  On the contrary:   application of law to the facts shows

that Defendant/Counterplaintiff ELAINE Y. ROSIN is entitled to prevail on all counts herein.

*See,* ROSIN's Motion for Summary Judgment, D.E. 39.

Defendant/Counterplaintiff ROSIN's **STATEMENT OF MATERIAL FACTS** relevant

to the instant Motion are filed herein at D.E. 40.  Her Response to the Joint Statement of Material

Facts filed by GREAT LAKES and TL DALLAS (D.E. 20) is filed herein at D.E. 42.

## TABLE OF CONTENTS of

## ARGUMENT and incorporated MEMORANDUM OF LAW

I.     There Are Many Material Facts Not Settled by Plaintiff's Submissions     5

II.    The U.S. Supreme Court's *Wilburn Boat* Is Controlling Precedent,

Squarely Leaving the Instant Action to Be Governed by Florida Law     7

       *Florida has expressed its intent to regulate marine insurance policies*     17

       *"Named-operator warranties" have recently received judicial scrutiny,*

*and held subject to state law, not federal admiralty law*     20

III.   Neither Florida Conflict of Laws Rules Nor Great Lakes's Choice of Law

Displaces the Norms Promulgated in the Florida Insurance Code     22

IV.    There Was No Increased Hazard;  and Great Lakes Has Identified No

Admissible Evidence of Same     24

V.     Responses to Particular Points in Great Lakes's Memorandum of Law     25

    A.     *Gfroerer* is not precedent     25

    B.     For the purposes of summary judgment, it is irrelevant

whether USI Florida was an agent or a broker     26

    C.     New York State substantive law is irrelevant to summary

judgment;  Florida substantive law governs, and Federal admiralty

procedures are to be applied     27

CONCLUSION     28

## TABLE OF CITATIONS

| *Statutes* | *Pages* |
|---|---|
| Fla. Stat. Title XXXVII ("Florida Insurance Code"), chaps. 624-651 | 17, 23, 28 |
| Fla. Stat. § 624.11 (2008) | 17, 23, 28 |
| Fla. Stat. § 624.401 (2008) | 17 |
| Fla. Stat. § 627.01(3) (2008) | 28 |
| Fla. Stat. § 627.409 (2008) | 10, 20, 23, 28 |
| Fla. Stat. § 627.409(1) (2008) | 10, 17, 19 |
| Fla. Stat. § 627.409(2) (2008) | 18, 24 |
| Fla. Stat. § 627.428 (2008) | 30 |
| Fla. Stat. § 671.105(1) (2008) | 23 |
| N.Y. Ins. Law § 2117(b) | 20 |
| N.Y. Ins. Law § 3420(e) | 20, 21 |
| P.R. Laws Ann. tit. 26, § 1101(1) | 19 |

| *Cases* | |
|---|---|
| *Aetna Cas. & Sur. Co. v. Enright*, 258 So. 2d 472 (Fla. 3d DCA 1972) | 22 |
| *Aguirre v. Citizens Casualty Co. of New York*, 441 F.2d 141 (5th Cir. 1971) | 12 |
| *Albany Ins. Co. v. Jones*, 1997 A.M.C. 1407 (D. Alaska 1996) | 11 |
| *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043 (11th Cir. 2007) | 22 |
| *AXA Global Risks (UK), Ltd. v. Webb*, 2000 WL 33179617 (M.D. Fla. 2000) | 13 |
| *Bohemia, Inc. v. Home Insurance Co.*, 725 F.2d 506 (9th Cir. 1984) | 10 |
| *Burroughs Corp. v. Suntogs of Miami, Inc.*, 472 So. 2d 1166 (Fla. 1985) | 22 |

*Canton Ins. Office v. Ind. Transp. Co.*, 217 F. 213 (9th Cir.1914)          12

*Capital Coastal Corp. v. Hartford Fire Ins. Co.*, 378 F. Supp. 163 (E.D. Va. 1974)          12

*Comm'l Union Ins. Co. v. Flagship Marine Serv., Inc.,* 190 F.3d 26
(2d Cir. 1999)          15, 20

*Dept. of Motor Vehicles for Use and Benefit of Fifth Ave. Motors v.
Mercedes-Benz of N. Am., Inc.* 408 So. 2d 627 (Fla. 2nd DCA 1981)          24

*Fireman's Fund Ins. Co. v. Cox*, 742 F.Supp. 609 (M.D. Fla. 1989), *aff'd without
opinion*, 892 F. 2d 87 (11th Cir. 1989)          13

*Gfroerer v. Ace Am. Ins. Co.*, 2005 A.M.C. 404 (W.D. N.Y. 2004)          25

*Hilton Oil Transp. v. Jonas*, 75 F.3d 627, 1996 A.M.C. 1308 (11th Cir. 1996)          14

*Home Insurance Co. v. Ciconett*, 179 F.2d 892 (6th Cir. 1950)          12

*Home Ins. v. Vernon Holdings*, 1994 WL 791971, 1995 A.M.C. 369
(S.D. Fla. 1994)          14

*Indem. Ins. Co. of N. Am. v. Cal. Stevedore & Ballast Co.,* 307 F.2d 513 (9th Cir. 1962)          10

*Ins. Co. of N. Am. v. Zaglool,* 526 F.Supp. 2d 361 (E.D. N.Y. 2007)          20

*Jefferson Ins. Co. of N.Y. v. Cassella*, 261 F.Supp. 160 (E.D. N.Y. 2003)          21

*Kiernan v. Zurich Cos.*, 150 F.3d 1120 (9th Cir. 1998)          10

*Kossick v. United Fruit Co.,* 365 U.S. 731 (1961)          20

*Lexington Ins. Co. v. Cooke's Seafood,* 835 F.2d 1364 (11th Cir. Jan. 19, 1988)          11-14

*Lloyd's of London v. Pagán-Sánchez*, 539 F.3d 19 (1st Cir. Aug. 21, 2008)          19, 20, 21

*Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337 (11th Cir. 2005)          22

*Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.,* 761 So. 2d 306 (Fla. 2000)          22

*N.H. Ins. Co. v. C'est Moi Inc.,* 406 F. Supp. 2d 1077 (C.D. Cal. 2005)          20

*Pickett v. Woods*, 404 So.2d 1152 (Fla. 5th DCA 1981)          13, 15, 30

*Royal Indem. Co. v. Providence Wash. Ins. Co.*, 707 N.E.2d 425                  21
(N.Y. 1998)

*State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006)          22

*Suydam v. Reed Stenhouse of Wash., Inc.*, 820 F.2d 1506 (9th Cir. 1987)      11

*Thanh Long P'ship v. Highlands Ins. Co.*, 32 F.3d 189 (5th Cir. 1994)        16, 27

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955)              8 *et seq.*

*Windward Traders, Ltd. v. Fred S. James & Co. of N.Y., Inc.*, 855 F.2d 814
(11th Cir. Sept. 22, 1988)                                                     13-15, 30

*Yu v. Albany Ins. Co.*, 281 F.3d 803 (9th Cir. 2002)                         11, 16

### Court rules

Fed. R. Evid. 802                                                                6

### Other citations

8 *Benedict on Admiralty*, § 12.11, Marine Insurance:  Express Warranties
(LexisNexis 2008)                                                                10

Anthony J. Cuva, *Marine Insurance*, §11.3 *in* <u>Maritime Law and Practice</u>
(The Florida Bar, 4th ed., 2004)                                              10

## **ARGUMENT**

## **and incorporated MEMORANDUM OF LAW**

Plaintiff/Counterdefendant GREAT LAKES's Memorandum of Law, D.E. 22, contains virtually no reference to any affidavit, deposition, answers to interrogatories, admissions, pleadings, or even its own Joint Statement of Material Facts.  As observed in ROSIN's Statement of Material Facts, D.E. 42, GREAT LAKES and TL DALLAS's Joint Statement of Material Facts is also lacking in appropriate references, and to the extent it does cite such documentation, it relies heavily on hearsay without any legally cognizable exception.  Fed. R. Evid. 802.

For these reasons alone, ROSIN respectfully submits that GREAT LAKES's Motion for Summary Judgment must be denied.

### **I.  There Are Many Material Facts Not Settled by Plaintiff's Submissions**

As shown in Defendant/Counterplaintiff ROSIN's Statement of Material Facts Submitted in Opposition to Motions for Final Summary Judgment, D.E. 42, GREAT LAKES's and TL DALLAS's Joint Statement of Material Fact (D.E. 20) does not provide factual matters "not in dispute."   In fact, the Joint Statement is rife with unattributed and unsupported factual conclusions.  Those "facts" that are accompanied by citations to depositions or affidavits are nearly all hearsay without legally cognizable exceptions.  GREAT LAKES's and TL DALLAS's Joint Statement of Facts is so thoroughly defective, that it is simpler to enumerate those paragraphs that are legitimately "not in dispute."   "In brief, ROSIN takes issue with all paragraphs of the Joint Statement *except* ¶¶ 4, 12, 16-18, 28-30, 31 (the second paragraph so numbered), and 32."  ROSIN's own Statement in response, D.E. 42, page 1.

GREAT LAKES's Memorandum of Law begins with a seven (7)-page Statement of the Case without references, which pointlessly duplicates, or impermissibly expands upon, its "Joint Statement of Material Facts Not in Dispute," D.E. 20.[1]

Nonetheless, under the pleadings herein, D.E. 1, 2 and 3, the factual circumstances under which GREAT LAKES may prevail are extremely limited.

GREAT LAKES's Complaint seeks to justify the denial of insurance coverage based on a small constellation of allegations:

1.      that Defendant ROSIN was "disclosed as the sole operator of the vessel under the terms of [her marine-insurance] Policy,"[2]

2.      that "while being operated by [her son] Paul Rosin in a canal in Broward County, the vessel is alleged to have struck a rock and subsequently to have sunk,"[3]

3.      that "at the time of the submission of the application for marine insurance coverage, the Defendant ELAINE Y. ROSIN failed to disclose the fact that Paul Rosin was going to be a regular operator of the vessel to be insured,"[4] and

4.      that "the vessel was being operated by Paul Rosin, and the Defendant ELAINE Y. ROSIN has therefore breached the referenced express warranty set forth in the Plaintiff's policy of marine insurance, voiding all coverage afforded under the policy of marine insurance."[5]

---

[1]      D.E. 20 is limited to ten (10) pages by Local Rule 7.5C, but actually consists of 19 substantive pages, or 26 substantive pages, if the "Statement of Facts" in the Memorandum of Law is included in the count.

[2]      GREAT LAKES's Complaint, ¶11, D.E. 1.

[3]      GREAT LAKES's Complaint, ¶13, D.E. 1.

[4]      GREAT LAKES's Complaint, ¶17, D.E. 1.  *See also,* Complaint, ¶29, D.E. 1 ("The Defendant ELAINE Y. ROSIN misrepresented and/or failed to disclose the material fact that Paul Rosin was going to be a regular operator of the vessel to be insured…").

[5]      GREAT LAKES's Complaint, ¶22, D.E. 1.

ROSIN's Statement of Material Facts controverts each of these allegations.  Paragraphs *5 et seq.* of ROSIN's Verified Statement of Material Facts, D.E. 40.  **To prevail, all ROSIN must show is *one* of the following:**

- that any one of GREAT LAKES's factual assertions enumerated above is incorrect;  or

- that Florida law (not New York law nor any general federal maritime law) applies, giving rise to any of three pled affirmative defenses[6] available in Florida law.

In short, GREAT LAKES must prevail on *every* factual and legal issue herein in order to merit declaratory relief.  In contrast, ROSIN has moved for summary judgment herself, D.E. 39, showing that she should prevail given the straightforward facts and contentions advanced therein.  Nonetheless, they are not the only factual and legal issues in her favor, as set out in the instant Response and Memorandum of Law.

## II.  The U.S. Supreme Court's *Wilburn Boat* is controlling precedent, squarely leaving the instant action to be governed by Florida law

The United States Supreme Court retains the authoritative word on choice of law for maritime insurance contracts.  *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310 (1955).  A significant portion of that opinion bears repeating:

> Since the insurance policy here sued on is a maritime contract the Admiralty Clause of the Constitution brings it within federal jurisdiction. But it does not follow . . . that every term in every maritime contract can only be controlled by some federally defined admiralty rule. In the field of maritime contracts as in that of maritime torts, the National Government has left much regulatory power in the States.  As later discussed in more detail, this state

---

[6]   Seventh Defense: Insured made no warranties, Fla. Stat. § 627.409(1); Eighth Defense: No causal connection, Fla. Stat. § 627.409(1);  Ninth Defense: No increase of hazard, Fla. Stat. § 627.409(2)

regulatory power, exercised with federal consent or acquiescence, has always been particularly broad in relation to insurance companies and the contracts they make.

Congress has not taken over the regulation of marine insurance contracts and has not dealt with the effect of marine insurance warranties at all; hence there is no possible question here of conflict between state law and any federal statute. But this does not answer the questions presented, since in the absence of controlling Acts of Congress this Court has fashioned a large part of the existing rules that govern admiralty. And States can no more override such judicial rules validly fashioned than they can override Acts of Congress. Consequently **the crucial questions in this case narrow down to these: (1) Is there a judicially established federal admiralty rule governing these warranties? (2) If not, should we fashion one?**

. . . .

**The whole judicial and legislative history of insurance regulation in the United States warns us against the judicial creation of admiralty rules to govern marine policy terms and warranties.** The control of all types of insurance companies and contracts has been primarily a state function since the States came into being. . . .

In this very case, should we attempt to fashion an admiralty rule governing policy provisions, we would at once be faced with the difficulty of determining what should be the consequences of breaches. **We could adopt the old common-law doctrine of forfeiting all right of recovery in the absence of strict and literal performance of warranties, but that is a harsh rule. Most States, deeming the old rule a breeder of wrong and injustice, have abandoned it in whole or in part.** But that has left open the question of what kind of new rule could be substituted that would be fair both to insurance companies and policyholders. Out of their abundant broad experience in regulating the insurance business, some state legislatures have adopted one kind of new rule and some another. Some States for example have denied companies the right to forfeit policies in the absence of an insured's bad faith or fraud. Other States have thought this kind of rule inadequate to stamp out forfeiture practices deemed evil. The result, as this Court has pointed out, has been state statutes like that of Texas which "go to the root of the evil" and forbid forfeiture for an insured's breach of policy terms unless the breach actually contributes to bring about the loss insured against. Thus there are a number of other possible rules from which this Court could fashion one for admiralty. But such a choice involves varied policy considerations and is obviously one which Congress is peculiarly suited to make. And we decline to undertake the task.

Under our present system of diverse state regulations, which is as old as the Union, the insurance business has become one of the great enterprises of the Nation. Congress has been exceedingly cautious about disturbing this system, even as to marine insurance where congressional power is undoubted. **We, like**

> **Congress, leave the regulation of marine insurance where it has been – with the States.**

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 313-21 (1955) (emphasis added) (footnotes and citations therein omitted).

The *Wilburn Boat* methodology must be employed here, asking, (1) Is there a judicially established federal admiralty rule governing the warranty at issue[7]? (2) If not, should the District Court fashion one?

In answer to the first question, there is no federal admiralty rule governing the "warranty"[8] that GREAT LAKES claims.[9]

In many jurisdictions, when a boat owner identifies the prospective operators of a vessel pursuant to a contractual warranty provision, it is known as a "*named-operator warranty*"[10]. Neither the undersigned counsel for ROSIN, nor, apparently, counsel for GREAT LAKES, has found any post-*Wilburn Boat* federal-substantive-law case, statute, or commentator suggesting

---

[7]     *See, supra,* point four at page 7.

[8]     In fact, there is no warranty at all, only a representation.  Fla. Stat. § 627.409 (1) (2008). *See* argument *infra,* page 17.

[9]     At least one commentator has concluded that in the years since *Wilburn Boat,* the area in which the states' control over marine insurance remains strongest is warranty law.  Anthony J. Cuva, *Marine Insurance*, §11.3 *in* <u>Maritime Law and Practice</u> (The Florida Bar, 4th ed., 2004), *citing Indem. Ins. Co. of N. Am. v. Cal. Stevedore & Ballast Co.,* 307 F.2d 513 (9th Cir. 1962).

[10]     *See, e.g., Ins. Co. of N. Am. v. Zaglool,* 526 F.Supp. 2d 361, 362 (E.D. N.Y. 2007). Indeed, GREAT LAKES argues that its insurance contract with ROSIN was voided by an alleged breach of a "*named operator warranty*".  Memorandum of Law, D.E. 22, Argument section III.

In Florida, there are no marine-insurance warranties *per se*;  only representations subject to the requirements placed on both contracting parties by Fla. Stat. § 627.409 (2008).

Where they exist, marine-insurance warranties have their own nomenclature, and each type has a unique legal history.  *See, e.g.,* 8 *Benedict on Admiralty,* § 12.11, Marine Insurance: Express Warranties (LexisNexis 2008).

that "*named-operator warranties*" are strictly applied, voiding coverage even when they bear no causal connection to the marine loss.

Regrettably, GREAT LAKES's Memorandum of Law, D.E. 22, erroneously cites cases to buoy up its argument. *Albany Ins. Co. v. Jones*, 1997 A.M.C. 1407 (D. Alaska 1996) has negligible analytic value. First, *Jones* addresses a "*crew warranty*", which is distinct from a *named-operator warranty*.[11] Second, the District Court of Alaska stated that "[our] Ninth Circuit has not considered the issue of express warranties in the context of marine insurance", apparently unaware of *Suydam v. Reed Stenhouse of Wash., Inc.*, 820 F.2d 1506 (9th Cir. 1987):

> In the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice, we look to state law, in this case Washington law, in determining the consequences of a breach of warranty in a marine insurance policy. *See Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 321, 99 L. Ed. 337, 75 S. Ct. 368 (1955); *Bohemia, Inc. v. Home Insurance Co.*, 725 F.2d 506, 510 (9th Cir. 1984).

*Suydam*, 820 F.2d at 1508. (In *Suydam*, the Ninth Circuit applied Washington law to an express warranty that the vessel would be operated and maintained in the commercial fishing industry. *Id.* Years later, the Ninth declined an opportunity to adopt the *Jones* analysis in *Yu v. Albany Ins. Co.*, 281 F.3d 803 (9th Cir. 2002), and conscientiously followed *Wilburn Boat.*[12])

GREAT LAKES's second grossly misinterpreted case, *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364 (11th Cir. Jan. 19, 1988), examined the following clause:

---

[11]     Perhaps the warranty at issue in *Jones* really was a "named-operator warranty." Nonetheless, the District Court of Alaska expressly applied reasoning and authorities fashioned for "*crew warranties*", and for that reason alone, *Jones* is inapposite.

[12]     "Ordinarily, our analysis of this issue would begin by deciding whether state or federal law governs. *See Wilburn Boat* . . . ; *see also Kiernan* [*v. Zurich Cos.*, 150 F.3d 1120, 1121 (9th Cir. 1998)]. In resolving such a question, we would apply state law unless an established federal rule addressed the issues raised, or there was a need for uniformity in admiralty practice." *Yu*, 281 F.3d at 808.

> *NAVIGATION WARRANTY*: confined to the inland and coastal waters of the United States from Cape Hatteras, North Carolina to Brownsville, Texas not exceeding 100 miles offshore, excluding all territorial waters of Cuba or Mexico.

*Id.* at 1366 (emphasis added). *Lexington* holds that a commercial fishing vessel, violating an unambiguous *navigation warranty* that it not venture 100 miles from shore, voids the marine insurance contract. Significantly, there is no record of any party arguing state law (Georgia or Texas), so the Eleventh Circuit did not make a choice-of-law ruling at all.

> [A]dmiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss. *Aguirre v. Citizens Casualty Co. of New York*, 441 F.2d 141, 143 (5th Cir. [1971]), . . . ; *accord Home Insurance Co. v. Ciconett*, 179 F.2d 892, 894 (6th Cir. 1950); *Canton Insurance Office v. Independent Transportation Co.*, 217 F. 213, 217 (9th Cir.1914); *Capital Coastal Corp. v. Hartford Fire Insurance Co.*, 378 F. Supp. 163, 172 (E.D. Va. 1974).

*Id.* From the vantage point of the instant action, it is clear that *Lexington* arose from a breach of a peculiarly maritime warranty[13], specifically, a *navigation warranty,* and similarly, *Aguirre* and *Capital Coastal* applied to express warranties of *seaworthiness*[14]. *Ciconett* and *Canton Insurance* both featured commercial insureds' breaching uniquely maritime warranties – and predate *Wilburn Boat.*

In *Lexington,* the Eleventh Circuit was not asked to distinguish between *navigation warranties* and *named-operator warranties*. Consequently, its holding is unintentionally overbroad in a way that becomes apparent only in the context of an action such as the one *sub judice* – or of one of many others not cited by GREAT LAKES. Fortunately, eight months after

---

[13]   A *named-operator warranty* is not "peculiarly maritime", since operators are named in automobile insurance, motorcycle insurance, aviation insurance, and industrial-heavy-equipment insurance.

[14]   The owner of the unseaworthy vessel was a commercial fishing joint venture. *Aguirre*, 441 F.2d at 142.

*Lexington*, the Eleventh Circuit issued *Windward Traders, Ltd. v. Fred S. James & Co. of N.Y., Inc.*, 855 F.2d 814 (11ᵗʰ Cir. Sept. 22, 1988).  By implication, *Windward* clarified that *Lexington* is not precedent for every case with marine-insurance warranties.[15]  In *Windward*, the parties stipulated that Florida substantive law applied, *Id.* at 817, and the Eleventh Circuit then held:

> Section 627.409(2) of the Florida Insurance Code provides that:
>> (2) A breach or a violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefore shall not render void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.
>
> As a Florida court explained, "the statute is designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss." *Pickett v. Woods*, 404 So.2d 1152, 1153 (Fla. [5ᵗʰ DCA] 1981)[16].

*Windward*, 855 F.2d at 817-18.   Fla. Stat. § 627.409(2) is the basis for ROSIN's Ninth Affirmative Defense, D.E. 2.  *See infra* at page 18.

The Middle District of Florida similarly relied on this Florida statute in *Fireman's Fund Ins. Co. v. Cox*, 742 F.Supp. 609, 611 (M.D. Fla. 1989) (with reference to a *crew warranty*, factually finding that the additional crew member did indeed increase risk to the vessel), *aff'd without opinion,* 892 F. 2d 87 (11ᵗʰ Cir. 1989).  The District court later expressly "assumed" that Fla. Stat. § 627.409(2) was applicable to *AXA Global Risks (UK), Ltd. v. Webb*, 2000 WL 33179617 (M.D. Fla. 2000), but found that the facts did not ultimately justify judgment for the boat owner.

---

[15]     *Lexington* and *Windward* were decided by two Eleventh-Circuit panels with no judges in common.  However, the *Windward* panel was surely aware of the *Lexington* result, and saw no incongruity.

[16]     *Pickett* itself concerned aviation insurance, and so is irrelevant to the instant action, except to the extent that the remedial legislative intent behind Fla. Stat. § 627.409(2) is of interest.

In *Home Ins. v. Vernon Holdings*, 1994 WL 791971, 1995 A.M.C. 369 (S.D. Fla. 1994)[17], Judge Edward B. Davis studiously reconciled *Wilburn Boat, Lexington* and *Windward Trader.* In carefully confining his analysis to a disputed *navigation warranty*, he underscored the fact that marine warranties of varying types are legally different. "[T]he Eleventh Circuit has established [in *Lexington*] a federal admiralty rule requiring strict adherence to **navigational limits warranties**." *Vernon Holdings*, 1994 WL 791971 at *3, 1995 A.M.C. at * (emphasis added). In his broader conclusion, Judge Davis wrote:

> the warranty at issue in *Wilburn Boat* was different than the warranty at issue in *Lexington* and in this case. The Southern District of Georgia explained in *Lexington*, and the Eleventh Circuit affirmed, that "[n]avigation warranties are peculiarly maritime in nature, unlike the warranty at issue in *Wilburn Boat.*" 686 F.Supp. at 328 . . .

*Id.*

GREAT LAKES has attempted to steer *Lexington* beyond its navigational limit. If there is a "judicially established and entrenched federal admiralty rule"[18] to be gleaned from the cases cited by GREAT LAKES, it involves unambiguous and uniquely maritime warranties[19] breached by sophisticated commercial boat operators.

Interestingly, the Court of Appeals for the Second Circuit has already compared Florida law to New York law, after finding that a *towage warranty* is not subject to a well-established

---

[17]     The wealth of legal analysis in *Vernon Holdings* is seemingly tailored to the instant action, but GREAT LAKES cites that opinion for a single proposition: that "federal [procedural] maritime law recognizes the particularly appropriate nature of summary judgment to resolve insurance coverage questions." Defendant/Counterplaintiff ROSIN agrees, and asks that her Motion for Summary Judgment, D.E. 39, be granted.

[18]     *Hilton Oil Transp. v. Jonas*, 75 F.3d 627, 630, 1996 A.M.C. 1308 (11th Cir. 1996), *reversing and remanding* due to a *navigation warranty* after the trial court granted summary judgment to the commercial operator of a barge that sank in a Honduran port.

[19]     Seaworthiness warranties, crew warranties, and navigation warranties (closely related to, or overlapping, "trading" warranties).

federal substantive rule.  *Commercial Union Ins. v. Flagship Marine Serv*., 190 F.3d 26 (2d Cir. 1999):

> Florida . . . treats maritime insurance contracts differently than it does other insurance contracts.  *See* [Fla. Stat. § 627.409(2)].  However, unlike New York and the majority of states, Florida does not require strict compliance with all warranties[20], but it does preclude recovery where the "breach or violation increased the hazard by any means within the control of the insured."  *Id.*;  *see* Hallock, 10 U.S.F. Mar. L.J. at 303 (noting that Florida, Texas, Hawaii, and Washington, unlike the majority of states, require "that the insurer demonstrate a causal connection between a breach of warranty and the loss in order to avoid coverage").  This rule was "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss."  *Windward Traders* [855 F.2d at 818] (*quoting Pickett v. Woods*, 404 So. 2d 1152, 1153 (Fla. [5th DCA] 1981)).

*Flagship Marine*, 190 F.3d at 31-32.

GREAT LAKES's Memorandum of Law, D.E. 22, cites *Flagship Marine* for its analysis of New York law, but neglects to observe that the same case indicates that if Florida law is applied, ROSIN prevails.

The Court of Appeals for the Fifth Circuit also distinguishes among types of marine warranties:

> **Ordinarily, the law of the state where the contract was formed governs construction of marine insurance contracts, except where the state law is displaced by admiralty law.**  *Wilburn Boat* . . .  Thanh Long argues that *Wilburn Boat* therefore requires this Court to apply Louisiana law, which prohibits implied warranties in insurance policies. We find this argument unpersuasive. Entrenched federal precedent exists on the **implied warranty of seaworthiness** and the interpretation of Inchmaree clauses in maritime insurance contracts, which displaces Louisiana law and **makes *Wilburn Boat* inapplicable to the seaworthiness issue.**

---

[20]    Here, the Second Circuit overlooks the first subsection of Fla. Stat. § 627.409, which provides that insured parties provide no warranties, only representations.

*Thanh Long P'ship v. Highlands Ins. Co.*, 32 F.3d 189, 193-94 (5th Cir. 1994) (citations omitted) (emphasis added).

Meanwhile, back in the Ninth Circuit, the appellate court declined to follow *Windward*'s example only because Hawaii had not enacted a statute similar to Fla. Stat. § 627.409. *Yu v. Albany Ins. Co.*, 281 F.3d 803, 810 (9th Cir. 2002).

In arguing that the instant case may be controlled by a "well established and entrenched principle of federal admiralty law," Plaintiff/Counterdefendant GREAT LAKES cites a great number of cases, but none lends it support. In this action, GREAT LAKES has advanced the proposition that if a future operator of an insured vessel has not been identified in an application, the "warranty" is breached, and there is no insurance coverage for the vessel, period. GREAT LAKES advocates this position:

- regardless that the application's term definitions were withheld from boat owners;

- regardless of how ambiguous the application was;

- regardless that the drafter of the application did not identify the operator section as a contract-voiding matter;

- regardless that the application concealed that it would be modified by terms in a future document authored by the same drafter;

- regardless that the operator on the day of accident was chosen under urgent or unforeseen circumstances;

- regardless that the operator on the day of accident was not a "regular operator"[21];

---

[21]     GREAT LAKES's own pleading suggests the most reasonable interpretation of the application: "at the time of the submission of the application for marine insurance coverage, the Defendant ELAINE Y. ROSIN failed to disclose the fact that Paul Rosin was going to be a

- regardless that the operator was not the cause of the accident; and

- regardless that the identity of the one-time operator did not increase any hazard.

*Florida has expressed its intent to regulate marine insurance policies*

The Florida Legislature has expressly enacted measures designed to protect all consumers

of *marine* insurance, including Dr. ROSIN:

**624.11  Compliance required.** – 
(1)  No person shall transact insurance in this state, or relative to a subject of insurance resident, located, or to be performed in this state, without complying with the applicable provisions of this [Insurance Code, Fla. Stat. Title XXXVII, chap. 624-651].

**627.401  Scope of this part.** – No provision of this part ["The Insurance Contract"] of this chapter [627] applies to:
. . .
(3)  *Wet marine* and transportation insurance, *except* ss. **627.409**...

**627.409  Representations in applications; warranties.** – 
(1)  **Any statement** . . . **made by** . . . **an insured** . . . in an application for an insurance policy . . . , or in negotiations for a policy or contract, **is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:**
    (a)  The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
    (b)  If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same

---

**regular operator** of the vessel . . ."   GREAT LAKES's Complaint, D.E. 1, page 4, ¶17. Emphasis added.  "The Defendant ELAINE Y. ROSIN misrepresented and/or failed to disclose the **material fact** that Paul Rosin was going to be a **regular operator** of the vessel . . ." *Id.,* page 9, par. 29.  Emphasis added.  The latter allegation expresses the proposition that materiality lies in a given person being **expected** to be a **regular** operator in the future.  This reflects the understanding of a prudent boat owner:  no man or woman can know who will be at the helm in future urgent circumstances.  Dr. ROSIN knew on January 10, 2007 that she would be the sole regular operator of the vessel.  And she was correct.

premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

(2) A breach or violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefor **does not void the policy or contract, or constitute a defense to a loss thereon**, unless such breach or violation increased the hazard by any means within the control of the insured.

Emphasis added.  ROSIN's Affirmative Defenses (D.E. 2) expressly invoked these legislatively

enacted protections:

### Seventh Defense: Insured made no warranties
### (defense to Counts I, II, and III and to paragraph (C)
### of Plaintiff's prayer for relief)

28.     Pursuant to Fla. Stat. § 627.409(1), "[a]ny statement or description made by or on behalf of an insured . . . in an application for an insurance policy . . ., or in negotiations for a policy . . ., is a representation and is not a warranty."

29.     Therefore, Counts I, II, and III of the Complaint herein fail to raise a legally cognizable ground to void of any insurance contract as sought in paragraph (C) of Plaintiff's prayer for relief.

### Eighth Defense: No causal connection
### (Fla. Stat. § 627.409(1))

30.     Defendant ROSIN made no misrepresentations, omissions, concealments of fact, or other incorrect statement in an application for an insurance contract, or in negotiations for an insurance contract.

31.     Even if she had made some such misrepresentation, omission, concealment of fact, or other incorrect statement, such would not have prevented recovery under the insurance contract as neither of the circumstances described in Fla. Stat. § 627.409(1)(a) or (b) exists.

### Ninth Defense: No increase of hazard
### (Fla. Stat. § 627.409(2))

32.     Defendant ROSIN did not breach or violate any warranty, condition, or provision of any contract of insurance, or application.

33.     Even if she had, such breach or violation would not have increased the hazard by any means within the control of ROSIN.

34.     Therefore, pursuant to Fla. Stat. § 627.409(2), there is no resulting voiding of the insurance contract or defense to ROSIN's claim thereunder.

GREAT LAKES did not reply to ROSIN's Affirmative Defenses, which is essential to claim one of the exceptions provided in Fla. Stat. § 627.409(1) (a) or (b).  Thus, if the Florida Legislature's express intent is given effect, Dr. ROSIN is entitled to prevail as a matter of law. Defendant/Counterplaintiff ROSIN that this is the manifest result intended by the U.S. Supreme Court:  "We, like Congress, leave the regulation of marine insurance where it has been – with the States."  *Wilburn Boat*, 348 U.S. at 321.

The most instructive case quoted[22] (albeit incompletely) by GREAT LAKES is *Lloyd's of London v. Pagán-Sánchez*.  Immediately after the portion quoted by movant, the First Circuit Court of Appeals held:

> Given this well-established general rule, in our view, the question becomes whether Puerto Rico has either clearly stated a contrary rule or demonstrated a strong interest in having a different rule.  Only if so, would we address the question of whether this is inherently a local dispute to Puerto Rico. [6] Puerto Rico has done neither.
>
>> [footnote] 6   As *Wilburn Boat* recognized, not "every term in every maritime contract can only be controlled by some federally defined admiralty rule," and the federal government has "left much regulatory power" in the states "in relation to insurance companies and the contracts they make." 348 U.S. at 314-15. And so sometimes terms in a maritime insurance contract so implicate local interests as to lead to the application of state law to interpret the contract.
>
> Here, the Puerto Rico legislature has expressed its intent to exclude maritime insurance contracts from its statutory provisions governing the interpretation and construction of insurance contracts. P.R. Laws Ann. tit. 26, § 1101(1). In addition, in twelve other provisions of its Insurance Code, the Puerto Rico legislature has excluded maritime insurance contracts from its insurance regulation.

*Lloyd's of London v. Pagán-Sánchez*, 539 F.3d 19, 25 (1st Cir. Aug. 21, 2008) (finding breach of the *fire-extinguisher warranty*).  *Pagán-Sánchez* has the virtues of being very recent, and of

---

[22]      D.E. 22, p. 19.

expressly following the *Wilburn Boat* precedent.  If the Puerto Rico legislature had adopted the

Florida Insurance Code, the First Circuit Court of Appeal would have held that no "warranty"

excused Lloyd's of London from contractually indemnifying Pagán-Sánchez.

### *"Named-operator warranties" have recently received judicial scrutiny, and held subject to state law, not federal admiralty law*

Recent *named-operator warranty* cases in the Eastern District of New York follow

*Wilburn Boat*, are factually more similar to the instant cause than those cited by GREAT

LAKES, and hold that state law applies.

> **Plaintiff contends that Zaglool breached the named operator warranty.**
> . . . .
>
> "A marine insurance contract is governed by maritime law and thus invokes federal admiralty jurisdiction." *New Hampshire Ins. Co. v. C'Est Moi Inc.,* 406 F. Supp. 2d 1077, 1081 (C.D. Cal. 2005) (citing *Kossick v. United Fruit Co.,* 365 U.S. 731, 735 . . . (1961).  However, **"[a]bsent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies . . . and apply federal maritime choice of law principles to determine which state's law applies."** *Commercial Union Ins. Co. v. Flagship Marine Serv., Inc.,* 190 F.3d 26, 30 (2d Cir. 1999). **The parties do not point to, and the Court has not found, a specific federal rule.**  Accordingly, having applied federal choice of law principles, the Court concludes, as have the parties, that New York law applies.

*Ins. Co. of N. Am. v. Zaglool,* 526 F.Supp. 2d 361, 365 (E.D. N.Y. 2007) (emphasis added)[23].  In

another case that closely parallels the instant action,

---

[23]    Unlike the instant action, *Zaglool* concerns liability insurance.  If the instant action were brought in the Eastern District of New York, it would probably be decided for the insurer, because ROSIN's property damage insurance is subject to yet another New York exception: N.Y. Ins. L. § 3420(e) (incorporating § 2117(b)).  In contrast to New York's multiple exceptions to the principle that marine-insurance warranties do not void coverage absent a causal connection, Florida's § 627.409 is entirely comprehensive.

> Plaintiff [marine insurer] argues that "breach of the named operator [warranty] voids the coverage afforded by [the] Policy." . . . This argument is not persuasive.  The [warranty] states that "[t]he persons listed on the following schedule is/are to be sole operator(s) of the insured vessel . . . . [and i]f the insured vessel is operated by any other person(s), this insurance is null and void."  The language of the Endorsement directly violates N.Y. Ins. Law § 3420(e).  Where a provision of an insurance policy does not comport with the public policies codified in N.Y. Ins. § 3420(e), it is void.  *Royal Indem. Co. v. Providence Washington Ins. Co.*, 92 N.Y.2d 653, 658 . . . (C.A. N.Y. 1998) ("the exclusion violates our public policy and is void.")  As such, the Court will not enforce this provision.

*Jefferson Ins. Co. of N.Y. v. Cassella*, 261 F.Supp. 160 (E.D. N.Y. 2003), *vacated in part on reconsideration on other grounds,* 2003 WL 23411876 (E.D. N.Y. 2003) (warranty-provision alterations in original).  Jefferson Insurance's exclusionary endorsement is a model of clarity compared to GREAT LAKES's purported policy (last 14 pages of composite Exhibit B to Complaint, D.E. 1 pages 23-36).

In essence, GREAT LAKES asks this honorable Court to establish a *new federal substantive admiralty rule*, one intended for all time in all judicial districts, overruling all conflicting state, commonwealth and territorial laws.  (There is no other kind;  either a substantive federal admiralty rule is "entrenched", or state substantive law applies.)  *Wilburn Boat* disapproved of such new rules, particularly when a given State has enacted dispositive law.  348 U.S. at 316-21.  *See also Pagán-Sánchez.*

### III.  Neither Florida Conflict of Laws Rules Nor Great Lakes's Choice of Law Displaces the Norms Promulgated in the Florida Insurance Code

The federal courts apply the conflict-of-law rules of the forum state,  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007).  In the instant action, that state is Florida.

GREAT LAKES claims that its purported policy[24] features a choice-of-law provision favoring New York law.  If this assertion is held to be correct,

> under Florida law, courts will enforce "choice-of-law provisions unless the law of the chosen forum contravenes strong public policy."  *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.,* 761 So. 2d 306, 311 (Fla. 2000) (citations omitted); *see Burroughs Corp. v. Suntogs of Miami, Inc.,* 472 So. 2d 1166, 1167-69 (Fla. 1985).

*Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005).  Regardless of whether GREAT LAKES's choice of law has general application to the insurance contract, **Florida does indeed have a court-recognized "paramount interest in protecting its citizens from inequitable insurance contracts." *Aetna Cas. & Sur. Co. v. Enright*, 258 So. 2d 472, 475 (Fla. 3d DCA 1972), *quoted in State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006).**  ROSIN submits that the approving quotation of *Enright* in *Roach* represents an authoritative and binding statement of Florida law by its highest court.

---

[24]     25.     After several requests and more than three (3) months after the loss, in March 2008, the insurance broker faxed to Counterplaintiff ROSIN a copy of the purported "policy", in substantially the form represented by a portion of the composite Exhibit "B" attached to GREAT LAKES's Complaint (D.E. 1, pages 23 through 35).   Counterplaintiff had never before seen the said purported "policy."
ROSIN's  Counterclaim, D.E. 2, page 11.

The intent of Florida's Insurance Code is plain:

> **624.11  Compliance required.** –
>
> (1)  No person shall transact insurance in this state, or relative to a subject of insurance resident, located, or to be performed in this state, without complying with the applicable provisions of this [Insurance Code, Fla. Stat. Title XXXVII, chap. 624-651].

Thus, the State of Florida prohibits insurance companies from operating in the State without complying with Fla. Stat. § 627.409.   ROSIN submits that the only way for an insurance company to so comply is to acknowledge the incorporation of normative Florida insurance law in its contracts.

GREAT LAKES does business in Florida with about 15 different insurance brokers, representing 30 percent of all of its U.S. business.[25]  Nearly all of the business conducted by TL DALLAS for GREAT LAKES in the United States is intended to be subject to the New-York choice-of-law provision of its copyrighted policy document, (last 14 pages of composite Exhibit B to Complaint, D.E. 1 pages 23-36).[26]  It appears that this form contract is intended to circumvent the protections of Florida residents enacted by the Florida Legislature.

Aside from the public-policy exception to contractual choice-of-law matters, Florida authorities occasionally apply a reasonable-relationship test.  In the Uniform Commercial Code context, Fla. Stat. § 671.105(1) (2008) provides: "**[W]hen a transaction bears a reasonable relation to this state and also to another state or nation**, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties."  Emphasis added.  At least one District Court of Appeal found it instructive to recite that

---

[25]     Depo of B.A. Usher, D.E. 25-2, pages 26 through 30.
[26]     Depo of B.A. Usher, D.E. 25-2, 23:19 through 24:1.

> [i]n addition to the express intent of the parties, a reasonable relationship to New Jersey is shown in the agreement itself.  Under the agreement, cars were ordered in New Jersey, titles remained in New Jersey prior to receipt of payment, pricing and credit terms were established in New Jersey, claims for damages were made in New Jersey, and all parts were ordered from New Jersey.

*Dept. of Motor Vehicles for Use and Benefit of Fifth Ave. Motors v. Mercedes-Benz of N. Am., Inc.* 408 So. 2d 627, 629 (Fla. 2nd DCA 1981).  In the instant action, the insurance coverage was negotiated in Florida, to be performed in Florida, paid for in Florida, through a Florida insurance broker or agent, on a Florida vessel, for a Florida permanent resident.  New York has nothing to do with the transaction, its negotiation or performance, the parties, the vessel, nor the accident.

## IV.  There Was No Increased Hazard;

## and Great Lakes Has Identified No Admissible Evidence of Same

Point IV of GREAT LAKES's Memorandum of Law (D.E. 22) argues that "the policy is void even according to Florida law since there was an increased hazard."  GREAT LAKES makes this argument in apparent response to ROSIN's Ninth affirmative defense.[27]  However, GREAT LAKES has already waived this position, as it has not filed a reply to ROSIN's affirmative defenses.

Nonetheless, GREAT LAKES avers that "the uncontroverted facts demonstrate that Paul Rosin's operation of the insured vessel constitutes precisely the type of 'increased hazard' which voids coverage under Florida law."  D.E. 22 at p. 23.  Unfortunately, the three (3) pages of argument on this point do not contain any citation to affidavit, deposition nor pleading, nor to GREAT LAKES's Joint Statement of Facts.  The Joint Statement of Facts itself (D.E. 20) states

---

[27]     No increase of hazard, Fla. Stat. § 627.409(2).  *See* text of this statute, *supra* page 13, and text of the affirmative defense, *supra* page 18.

a number of matters about Paul Rosin.  None of them constitutes or indicates an "increased hazard" linkable to the vessel striking a submerged object undetected by the activated depth sounder, nor does the Joint Statement refer to an "increased hazard".  In fact, there was no increase of the hazard that befell the Queen of Hearts simply because Paul Rosin, and not Dr. ROSIN herself, was delivering the boat for badly needed and strongly recommended bottom-painting on November 3, 2007.  D.E. 39, p. 9;  D.E. 40, pp. 4, 8.  Paul Rosin himself testified that striking the submerged object was a blameless accident.  D.E. 27-2, pages 50 *et seq.*

### V.  Responses to Particular Points in Great Lakes's Memorandum of Law

#### A.       *Gfroerer* is not precedent

GREAT LAKES's Memorandum of Law cites *Gfroerer v. Ace Am. Ins. Co.*, 2005 A.M.C. 404 (W.D. N.Y. 2004)[28] for the proposition that the word "operated" is unambiguous. D.E. 22, page 13.  It is odd, because "operated" is not the precise word in this action that is at issue.  The "Yacht Application" signed by ROSIN[29] referred to "operators," in a completely different context from that of *Gfroerer*:

> [Gfroerer's] Donzi has nearly 1,000 horsepower, is capable of speeding near 80 miles per hour and is considered a dangerous boat that requires a skilled driver.[30]  Accordingly, the Policy contains a "High Performance Vessel

---

[28]      The Second Circuit's summary-order affirmance states that it "may not be cited as precedential authority".  Nonetheless, it interestingly observes that Mark Gfroerer owned a "high performance vessel," and that the District Court's ruling was justified in part "[i]n light of the Donzi's performance capabilities . . ." *Gfroerer v. Ace Am. Ins. Co.*, case no. 05-0308-cv, http://www.ca2.uscourts.gov/opinions.htm (in "search all", select "summary orders" and enter the name "Gfroerer").

[29]      D.E. 2-1, authenticated by ROSIN at D.E. 40, page 5, n.12.

[30]      [footnote no. 2 to the *Gfroerer* Order:]  The Donzi 38 ZX is described on its website as follows:  "This is not a boat for the timid. Like its drivers, it stands ready to push the limits of conventional speed and performance. Capable of holding up to 1100 horses, and reaching speeds

Endorsement" provision (the "Endorsement"), which provides, in pertinent part: ". . .  Named Operator Warranted by the insured that the coverage provided by this policy applies only if the insured vessel is operated by: MARK F. GFROERER" The dispute in this case arises from what is meant by "operated by" and to what extent, if at all, the Endorsement is valid.

*Id.*  The phrase "operated by" was construed in the context of a specific policy, *according to New York law.*

### B.     For the purposes of summary judgment, it is irrelevant whether USI Florida was an agent or a broker

The document at issue herein, the Yacht Application itself, is ambiguous.  It does not matter who USI Florida was in the view of GREAT LAKES.   As ROSIN states in the Memorandum of Law she submits in conjunction with her own Motion for Summary Judgment, D.E. 39,

> The Yacht Application did not communicate the peculiar meanings argued by GREAT LAKES.  There are no definitions and no instruction sheet provided to boat owners, (D.E. 25 at 66:19 through 68:1).  The definitions and instructions are given ONLY to insurance agents or brokers;  the boat owner is left at sea:
> 11  [Q.] . . . you mentioned
> 12  that T.L. Dallas recommends that questions be asked
> 13  regarding the contents of the application and the
> 14  meaning of it; correct?
> 15      A.   Contents of the policy wording.  We don't
> 16  specifically ask them to review the application form.
> 17  But we would expect if a broker had any concerns about
> 18  the nature of the questions we were asking or what we
> 19  meant by the questions we were asking, we would expect
> 20  them to raise it.
> 21      Q.   With T.L. Dallas directly?
> 22      A.   With us, yes.
> 23      Q.   What if a potential insured had a question

---

in excess of 80 mph, the Donzi 38 ZX caters to those unafraid to demand the very best."   In contrast Paul Rosin drove the Queen of Hearts responsibly, and was only 100 yards from his destination (where the bottom was to be painted) when it struck a submerged object not detected by the depth sounder.  ROSIN Verified Statement of Facts, D.E. 40, page 8.

```
24  about the policy contents?
25      A.   They should ask their broker.
 1      Q.   What if a potential insured has a question
 2  about the significance of any term in the application?
 3      A.   Ask the broker.
 4      Q.   What are the consequences if the broker
 5  answers the insured's question and gets it wrong from
 6  T.L. Dallas' point of view?
 7      A.   The insured would have recourse against
 8  the broker.
```

[Depo of B.A. Usher, Managing Agent for T.L. DALLAS and GREAT LAKES's designate for Fed. R. Civ. P. 30(b)(6) purposes,] D.E. 25 at 75:11 through 76:8.

By conscious design, GREAT LAKES and TL DALLAS withheld "Yacht Application" definitions and instructions from all boat owners, including Dr. ROSIN.  Obviously, the Application could simply notify readers that definitions and instructions may be found on an Internet web page.

D.E. 39, pages 5-6.

Furthermore, regardless of the interpretation of the Yacht Application, ROSIN's legal position rests largely on Florida law, as pled in her Seventh, Eighth and Ninth Affirmative Defenses, D.E. 2.

**C.    New York State substantive law is irrelevant to summary judgment;  Florida substantive law governs, and Federal admiralty procedures are to be applied**

"Ordinarily, the law of the state where the contract was formed governs construction of marine insurance contracts, except where the state law is displaced by admiralty law." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310 (1955), *quoted in Thanh Long P'ship v. Highlands Ins. Co*., 32 F. 3d 189, 193 (5th Cir. 1994).

The insurance contract at issue herein was formed, signed, delivered, and designed to be performed in Florida, concerning a vessel continuously located in Florida waters.  The Florida

legislature intended the normative provisions of the Florida Insurance Code to apply to this marine insurance:

> **624.11  Compliance required.** –
> (1)  No person shall transact insurance in this state, or relative to a subject of insurance resident, located, or to be performed in this state, without complying with the applicable provisions of this [Insurance Code, Fla. Stat. Title XXXVII, chap. 624-651].

In other words, GREAT LAKES cannot opt out of Florida normative law, regardless of the choice of law for contractual-provision purposes.


### CONCLUSION

GREAT LAKES has alleged that it insured Dr. ROSIN's vessel for adequate consideration.  It has denied coverage for the slightest of reasons:  that she had not disclosed that her son would be a "regular operator" on the Yacht Application.  ROSIN **NEVER** considered her son to be a potential regular operator, nor was he in fact ever a regular operator.  During the time that the vessel was insured by GREAT LAKES or TL DALLAS, Paul Rosin only drove the vessel once, on the occasion that ROSIN determined that it required urgent bottom painting to prevent hull damage.

GREAT LAKES's position is at odds with the basic tenets of contract construction and the normative statutes that the Florida Legislature expressly applied to marine-insurance contracts.[31]  Specifically, an insured, such as Dr. ROSIN, makes no warranties, only representations;  further, there is no causal connection between Paul Rosin driving and the Queen of Hearts striking a submerged object undetected by the activated depth sounder;  there was no

---

[31]  "No provision of this part of this chapter applies to: . . . (3) Wet marine and transportation insurance except ss. 627.409 . . ."  Fla. Stat. § 627.01(3) (2008).

increase of the hazard that befell the Queen of Hearts because Paul Rosin, and not Dr. ROSIN herself, was delivering the boat for badly needed and strongly recommended bottom-painting on November 3, 2007.

At most, the Yacht Application was latently ambiguous in not disclosing in concrete terms that **every** remotely possible operator, must be identified before the policy takes effect, or the owner's loss will go utterly uncompensated.  In fact, GREAT LAKES has held *many* matters to be evident to boat owners, even as it has willfully and consistently neglected simple clarification.

Paul Rosin was the driver when the vessel struck a submerged object that was not detected by the activated depth sounder.  The accident could have happened regardless of who the driver was.  It is immaterial that Dr. Elaine ROSIN was not at the helm the moment the Queen of Hearts was approaching Govan Marine for bottom painting.

There is no federal admiralty rule that governs "named-operator warranties", nor the representations that might be their Florida analogs.  *Wilburn Boat* and its progeny make State law govern this matter.  GREAT LAKES claims that its policy document – never seen by Dr. ROSIN until four months after the sinking of the Queen of Hearts – features a New York choice-of-law clause, despite the fact that New York has no interest in this matter whatsoever, legally or geographically.  Florida law clearly expresses public policy that governs every one of the hundreds or thousands of insurance contracts between Florida residents and GREAT LAKES, one that prohibits the "insurer from avoiding coverage on a technical omission playing no part in the loss."  *Pickett v. Woods*, 404 So. 2d at 1153 (Fla. 5th DCA 1981), *quoted in Windward Traders,* 855 F.2d at 818 (11th Cir. 1988).

**WHEREFORE**, Defendant/Counterplaintiff ELAINE Y. ROSIN, M.D. respectfully requests GREAT LAKES's Motion for Summary Judgment, D.E. 18, be denied, and that she be granted summary final judgment on the issue of liability on all counts of the Complaint and Counterclaim herein against Plaintiff GREAT LAKES REINSURANCE (UK), PLC (hereinafter "GREAT LAKES"), as requested in her own Motion for Summary Judgment, D.E. 39, awarding the sum of $175,000.00 in damages, attorney's fees pursuant to Fla. Stat. § 627.428, and costs.

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on April 3rd, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/James W. Beagle</u>

<u>**SERVICE LIST**</u>

Great Lakes Reinsurance (UK) plc. v. Rosin, et al.
Case No.  08-CV-60399-Jordan
Magistrate Torres
United States District Court Southern District of Florida

James W. Beagle, Esq.
jb@beagleesq.com
James Beagle, P.A.
110 East Broward Boulevard, #1700
Fort Lauderdale, FL  33301
Telephone:  (305) 935-3934
Fax:  (305) 935-1254
Florida Bar no. 521418
Counsel for Defendant/Counterplaintiff ROSIN
[Via electronic filing]

Steven E. Goldman, Esq.
Goldman & Hellman
800 S.E. 3rd Avenue
Fort Lauderdale, FL  33316
Florida Bar no.
Telephone:  (954) 356-0460
Fax:  (954) 832-0878
Counsel for Plaintiff/Counterdefendant GREAT LAKES
and for Counterdefendant TL DALLAS
[Via electronic filing]