```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                            IN ADMIRALTY
```

GREAT LAKES REINSURANCE
(UK)PLC,

    Plaintiff,

vs.                                  CASE NO. 08-CIV-60399-JORDAN

                                        Magistrate Judge Torres

ELAINE Y. ROSIN, *et al*,

    Defendants.
_____/

## PLAINTIFF'S MOTION FOR RECONSIDERATION
## OR FOR CLARIFICATION OF ORDER DENYING
## <u>MOTION FOR SUMMARY JUDGMENT</u>

    COMES NOW the Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, by and through its undersigned attorneys, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Rule 7.5 of the Local Rules of the United States District Court for the Southern District of Florida, files this its Motion for Reconsideration or for Clarification of this Court's Order of July 31, 2009 denying Plaintiff's Motion for Summary Judgment, and further thereto would respectfully state as follows:

    The undersigned counsel for the Plaintiff is disappointed by the Court's failure to award summary judgment by applying what has been argued is an established and well entrenched principle of federal admiralty law holding that breach of any express warranty in a policy of marine insurance is sufficient to void that policy. Plaintiff readily acknowledged in its summary judgment submissions that ever since the Supreme Court's infamous decision in the

*Wilburn Boat* case, more than half a century ago, an as yet undiminished controversy has raged over the precise meaning of that decision, with some courts taking the position that there is no longer any federal admiralty law rule dealing with the impact of a breach of warranty, while other courts (and commentators, too, *see, e.g.,* Thomas J. Schoenbaum, *Admiralty and Maritime Law* (3rd ed. 2001) sec. 17.2) have found the decision to be ill-founded and have therefore striven to limit its impact.

In the disturbed wake left by the *Wilburn Boat* case, the law dealing with the impact of a breach of warranty in a marine insurance policy has tended to develop on a case by case basis, depending on the particular warranty under scrutiny, its history, whether it is seen as unique to or in some particular manner historic in the context of marine insurance, etc. For example, to the best of the undersigned counsel's knowledge, there is absolutely no controversy at the present time with regard to the impact of a breach of a Navigational Limits Warranty. Every court, without exception, agrees that breach of this particular express warranty will void coverage regardless of any lack of causal connection between the breach and the loss, and notwithstanding anything to the contrary in a state statute. *See, e.g., Lexington Ins. Co. v. Cooke's Seafood*, 1988 A.M.C. 1238 (11th Cir. 1988); *La*

*Reunion Francaise, S.A. v. Christy*, 1999 A.M.C. 2499 (M.D. Fla. 1999).

As noted, the undersigned counsel for the Plaintiff expressly acknowledged that this controversy concerning the impact of a breach of warranty continues to exist, while citing (hopefully) this Court to the reasoning set forth by Judge Sedwick in the case of *Albany Ins. Co. v. Jones*, 1997 A.M.C. 1407 (D. Alaska 1996) as support for finding that there is indeed an established federal admiralty law rule of "strict or literal compliance" with an express warranty, and that this rule should be applied in the context of the Named Operator Warranty which is the subject of the case at bar. The holding in the *Albany Ins. Co. v. Jones* case explicitly relied upon the 11th Circuit's ruling in the case of *Lexington Ins. Co. v. Cooke's Seafood, supra,* as support for holding that breach of a Named Operator Warranty should void the policy under the federal admiralty law rule of "strict or literal compliance," without proof of any causal connection between the breach and the loss. Judge Sedwick concluded that the Named Operator Warranty is substantially similar to the Navigational Limits Warranty which the 11th Circuit addressed in the *Lexington Ins. Co. v. Cooke's Seafood* case, such that the question of **_who_** might be operating the insured vessel would be just as critical to the insurer as the question of **_where_** the insured vessel might operating.

3

This Court seemed to have itself acknowledged that the 11th Circuit has rejected any suggestion that the impact of *Wilburn Boat* is to turn over to state law all matters involving breach of express warranties in marine insurance policies, noting its own uncertainty regarding a federal admiralty law rule on the subject despite what it termed "recent Eleventh Circuit cases." Nonetheless, as the undersigned feared and is fully prepared to accept, this Court has apparently decided to place itself on the side of those courts, and admittedly it is a considerable number, which have chosen to reject the existence of any federal admiralty law rule, at least where the Named Operator Warranty is concerned.

The undersigned counsel for the Plaintiff is also disappointed by the Court's failure to award summary judgment by ruling that the policy contains a valid and enforceable Choice of Law clause and that under the law of New York state, like the pre-*Wilburn Boat* federal admiralty law rule, any breach of any express warranty is sufficient to void a policy of marine insurance. The Court has stated that it is unable to rule on the validity of the policy's Choice of Law clause because there is nothing in the record "concerning what connection New York has to Great Lakes or to this transaction." It is respectfully submitted that the Court seems to have overlooked the Supplemental Affidavit in Support of Plaintiff's Motion for Summary Judgment [DE 50], attached as

4

Exhibit "A," which was filed on April 15, 2009, in which Plaintiff's underwriter B.A. Usher sets forth the list of connections which Great Lakes Re has and maintains with New York State. These include the following

- A). New York was the first state in which Great Lakes Re gained approval as a surplus lines carrier;
- B). Plaintiff's agent for service, listed in the policy itself, is domiciled in New York; and
- C). Great Lakes Re maintains its legally mandatory United States Trust Fund accounts in New York, in the Bank of New York.

It is respectfully submitted that this honorable Court has overlooked the aforesaid facts, which are also matters of public record, and Plaintiff asks this Court to review and reconsider its failure to award summary judgment based on the New York state law called for under the policy's Choice of Law clause.

Plaintiff readily admitted in its pleadings in support of summary judgment that the Choice of Law clause was drafted with the conscious intent of addressing the situation that presently exists, and now vividly on display in the instant matter, where uncertainty reigns over the question of what law will be utilized to resolve a particular breach of warranty dispute. By choosing New York state law, Plaintiff seeks to ensure that the same rule of "strict or

5

literal compliance" will be utilized to resolve every case that goes into litigation over a breach of an express warranty, regardless of whether the court has reference to the pre-*Wilburn Boat* federal admiralty law rule or to the New York state rule.

Plaintiff cited the Court to the recent unpublished decision of the Southern District of Texas in the case of *Great Lakes Reinsurance (UK) plc v. Southern Marine Concepts, Inc.*, Case No. G-07-276 wherein it was also shown via affidavit that Great Lakes Re maintains accounts in New York state and that its agent for service of process is to be found in New York state.

The exact same set of facts which are set forth in Mr. Usher's Supplemental Affidavit in Support of Summary Judgment were also set before another federal district court in another litigation involving Great Lakes Re, and these connections with New York State were expressly held to be sufficient to uphold the validity of this Choice of Law Clause. Therefore, these matters testified to and in the record in the instant litigation are now matters of public record, noted by the Southern District of Texas in the *Great Lakes Reinsurance (UK) plc v. Southern Marine Concepts, Inc.* case. That court stated:

> Southern Marine argues that New York has no substantial relationship to the dispute or the parties, and the clause is therefore unenforceable. In place of the choice of law provision,

> Southern Marine argues that Texas law should apply as the state with the most substantial relationship to the litigation. However, Great Lakes has offered evidence that it has substantial assets in and connections to New York, including the presence of its agent for service. ***This is enough to uphold the agreed-to choice of law provision.*** (Emphasis added).

It is respectfully submitted that if the facts set forth in Mr. Usher's affidavit of April 15, 2009 were "enough to uphold the agreed-to choice of law provision" in the *Southern Marine Concepts* case, they should also be enough to uphold the same agreed-to Choice of Law clause before the instant litigation.

The Choice of Law clause "is presumptively valid and it is the [Defendant's] burden to demonstrate why it should not be enforced." *Mazzoni Farms v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, at 311 (Fla. 2000). The Defendant failed to respond in any manner to Plaintiff's assertions regarding its New York connections, and these therefore remain on the record and unrebutted. This Court has been presented with undisputed, albeit apparently overlooked, facts regarding the New York connections of the Plaintiff and this Court has been cited to another case involving Great Lakes Re where the Choice of Law clause was expressly approved on the basis of the very connections to New York which have now been presented herein. Accordingly, it is respectfully submitted that these is a quite sufficient basis for a finding that the Choice of Law clause in the policy is valid and enforceable.

7

The foregoing having been stated, the undersigned counsel for the Plaintiff expressly noted the predictable fact that Defendant would argue for reference to Florida state law as the rule of decision on summary judgment, and Plaintiff accordingly went to great lengths to set before this Court a great many undisputed facts which would establish that summary judgment in favor of the Plaintiff would also be warranted under Florida state law. Plaintiff recognized that it was very possible, indeed even likely, that this Court would at the very least review Florida state law and in a summary judgment ruling note that an outcome in favor of Plaintiff was supported by all three (3) legal regimes, *i.e.*, federal law, New York state law and Florida state law.

The foregoing is a fairly common method resorted to by federal district courts around the country, precisely because of the impact of the *Wilburn Boat* case in creating a plague of uncertainty regarding whether federal admiralty law or state law is to be utilized to determine the effect on coverage of a breach of any particular express warranty. To avoid having to come down on either side of an issue that clearly remains very much in dispute, and also to take precaution against a reversal on appeal to an unsympathetic circuit court, district courts will commonly endeavor to rule that the facts of the case call for voiding coverage under both the federal admiralty law rule and the state statute.

The latter method was, for example, utilized by the Middle District of Florida in the case of *AXA Global Risks (UK) Ltd. v. Webb*, 2000 A.M.C. 2679 (M.D. Fla. 2000), cited by this Court at p. 3 of the July 31, 2009 Order. The undersigned counsel for Plaintiff also represented the marine insurer in the *AXA Global Risks (UK) Ltd. v. Webb* case, and welcomed the fact that the decision voiding coverage where a lay-up warranty had been breached was based explicitly on **_both_** federal admiralty law and Florida state law, since the likelihood of any successful appeal of the district court's action was thereby greatly diminished. *See also, Yu v. Albany Ins. Co.*, 2002 A.M.C. 660 (9th Cir. 2002).

Plaintiff in fact recognized that if this Court rejected reference to federal or New York state law, it would be the Plaintiff which would bear the burden under Florida state law of establishing that breach of the Named Operator Warranty, in this particular situation and under the facts particular to this case, did in fact increase the hazard of the event which occurred on November 3, 2007. Reconsideration of this Court's Order of July 31, 2009 is therefore sought because it is respectfully submitted that Plaintiff has carried this burden, and has amply demonstrated that in this particular situation and under the facts particular to this case, breach of the Named Operator Warranty did in fact increase the hazard of the event which occurred on November 3, 2007.

Plaintiff respectfully submits that there is absolutely nothing to proceed to trial on, as the undisputed material facts now before the Court demonstrate that operation of the vessel by Paul Rosin was a breach of an express warranty which increased the hazard of the event which occurred.

The undersigned counsel for the Plaintiff is therefore most disappointed, and also utterly perplexed, by this Court's refusal to award summary judgment, and respectfully asks this Court to reconsider its Order of July 31, 2009. In the alternative, the undersigned counsel for Plaintiff respectfully asks this Court to clarify the said Order by setting forth just what facts are believed to remain in dispute so that he can prepare for a trial.

The last thing in the world the undersigned counsel for Plaintiff would wish to do would be to give offense to this esteemed Court. Therefore, it is with the greatest respect that the undersigned counsel for Plaintiff is inquiring of this Court precisely what it is that remains to be tried?

Precisely what is it that this Court believes must still be established via a bench trial on the morning of August 17, 2009?

It is already established and in the record that Paul Rosin was operating the vessel at the time of the accident, when he ran the vessel aground on rocks or some unknown underwater obstruction

near the marine in Fort Lauderdale where the vessel was to have its bottom painted.

It is already established and in the record that Paul Rosin has a history of reckless operation of watercraft, documented by his conviction on just such a charge in Ohio.

It is already established and in the record that whereas Elaine Rosin has completed a recognized course on safe operation of watercraft, Paul Rosin has no such credential.

It is already established and in the record that Paul Rosin's experience in operating the insured vessel was limited to no more than 3 or 4 prior occasions. Mr. Rosin admitted in his deposition that he had lied (the polite term that he insisted upon was "exaggerated") when he informed Plaintiff's investigator that he had operated the insured vessel 40 or 50 times.

It is already established and in the record that Paul Rosin had never before operated the insured vessel in this particular stretch of the South Florida canal system. So this was the very first time that Paul Rosin, already relatively unfamiliar with the vessel, had ever operated this particular vessel in this particular area. The manifest and indeed unavoidable conclusion which Plaintiff once again asks this Court to reach is that these undisputed facts establish some (at least) modestly increased risk of a vessel being operated by Paul Rosin being involved in this

11

precise type of incident, where no other vessel was involved and where no contributing fault by some other party was involved.

All of the foregoing has been established via the completion of discovery and Plaintiff respectfully submits that this Court is mistaken in requiring that the matter go to trial. A trial would only be necessary in the event that some issue of material fact remained to be established. However, as noted, everything necessary for summary judgment has already been established.

No additional facts beyond those already presented to this Court in the summary judgment pleadings can or will be presented a bench trial. It is respectfully submitted that the duty of this Court is to either conclude that the undisputed facts in evidence ***do*** demonstrate an increase in the hazard, in which case summary judgment should be entered in favor of the Plaintiff, or else that that the undisputed facts in evidence ***do not*** demonstrate an increase in the hazard, in which case summary judgment should be entered in favor of the Defendant.

Moreover, it was for the Defendant to come forward with evidence to rebut the showing made by Plaintiff regarding the increase in the risk created by Paul Rosin being at the controls of the insured vessel. Rule 56(e) states that the party opposing summary judgment "may not rest upon the mere allegations and

denials if [its] pleadings, but [its] response... must set froth specific facts showing that there is a genuine issue for trial."

> It is the obligation of the non-moving party, however, not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment; Rule 56 requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.

*Great Lakes Reinsurance (UK) plc v. Soveral*, 2007 A.M.C. 672, at 673-74; *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, at 324 (1986).

It is respectfully submitted that there is a conspicuous dearth of any evidence in the record before this Court that might contradict Plaintiff's evidence of how and why Paul Rosin at the helm of the vessel increased the hazard of the November 3, 2007 event, a one-vessel incident where no other outside agency other than Paul Rosin was involved in the slightest way.

It bears repetition that Plaintiff does not need to show that Paul Rosin at the helm caused the incident. Plaintiff's burden, and all that Plaintiff is required to show, is that Paul Rosin at the helm increased the risk.

This burden has been carried. All that remains is for this Court to reach the conclusion that the undisputed facts which have been established by the diligent efforts of the Plaintiff demonstrate that operation by Paul Rosin increased the hazard. The

latter is a legal conclusion uniquely within the province of this Court and does not call for a trial. There is no issue of fact remaining to necessitate a bench trial.

As Plaintiff has already asserted, this is not a case where Paul Rosin was operating the vessel and it was struck by a bolt of lightning. This is not a case where Paul Rosin was operating the vessel and it was struck by some drunk recklessly operating another vessel. In either of the latter situations it would matter not whether it was Paul Rosin or anybody else who was operating the vessel insured by Plaintiff's policy of marine insurance. Clearly, there is no increased risk of a lightning strike simply because of whom it is that is operating the vessel insured by the Plaintiff. Neither is there any increased risk of the vessel being rammed by some drunken vessel operator because of whom it is that is operating the vessel insured by the Plaintiff, and Plaintiff would not be arguing before this Court today for voiding the policy due to breach of the Named Operator Warranty had either of the latter scenarios taken place.

However, in stark contrast, it most assuredly does matter in the instant matter who it was that was operating the vessel, where that operator ran the vessel aground on rocks or some other obstruction, because the established and undisputed evidence as to

Paul Rosin demonstrates quite graphically that his being at the helm did increase the risk of precisely such a single vessel event.

Plaintiff does not need to prove that Paul Rosin's relative lack of experience operating this particular vessel caused or even contributed to the vessel running aground on rocks. Plaintiff does not need to prove that Paul Rosin's established and recent history of being cited for reckless operation of a watercraft caused or even contributed to the vessel running aground on rocks. Plaintiff does not need to prove that Paul Rosin never having operated this vessel in this particular stretch of canal prior to November 3, 2007 caused or contributed to the vessel running aground on rocks.

There are indeed a number of states (Texas and Louisiana are just two examples) where the legislatures in their wisdom have enacted statutes which do indeed require a showing of a causal connection between the breach and the loss in order for the policy to be rendered void by the breach. Unfortunately for the Defendant here, the solons who do business in Florida's capital city of Tallahassee have not seen fit to impose any such requirement upon marine insurers such as Great Lakes Re.

All the Plaintiff must do in order for this Court to award summary judgment under Florida law is to show that each of the facts reviewed above is undisputed, and then it is for this Court to draw what is respectfully submitted is the self-evident conclusion that Paul Rosin being at the helm of the vessel

increased the hazard of the November 3, 2007 event. Summary judgment must then be granted.

As this Court has itself noted, the question which remains, *i.e.*, whether these undisputed facts did actually increase the hazard, "***is not necessarily a question of fact***." This Court has itself cited marine insurance cases which confirm that where the marine insurer has established that a breach occurred, the federal district court may itself determine whether that breach voids the coverage because the breach increased the hazard. In the case of *Clarendon Ins. Co. v. Bayside Restaurant*, 567 F.Supp.2d 1379 (M.D. Fla. 2008), a summary judgment was granted where the evidence established that breach of an express warranty that the insured premises would be in compliance with building codes was seen to have increased the hazard of someone getting hurt on the property. In *AXA Global Risks (UK) Ltd. v. Webb, supra*, summary judgment was granted where operation of the insured vessel in breach of a warranty calling for the vessel to be laid up and out of commission was seen to have increased the hazard of the vessel being damaged during such operation.

In the case of *Fireman's Fund Ins. Co. v. Cox*, 1990 A.M.C. 908 (M.D. Fla. 1989), a summary judgment was granted (under Florida state law) where the evidence established that more "crew members" were aboard the vessel than the three (3) who were permitted under

16

the terms of a crew warranty in the policy, and where this excessive number of crew was seen to have increased the marine insurer's exposure to liability claims involving crew.

As set forth in the sworn affidavit of Plaintiff's underwriter, B.A. Usher, Great Lakes Re was manifestly exposed to an unacceptably greater risk of a first party claim on the insured vessel's hull in the event that someone possessed of the same gaudy background and lack of qualification as Paul Rosin were to be at the helm. Together with the glaring fact that this was the first occasion upon which Paul Rosin was operating his mother's vessel in this particular stretch of canal, the increased hazard of this type of incident is self-evident and requires no trial.

Research by the undersigned counsel for Plaintiff has failed to reveal a single case (in Florida or in any other jurisdiction which follows Florida in having enacted a statute allowing for coverage to be voided for breach of an express warranty only where the breach increased the hazard, such as, for example, Massachusetts) which holds that whether or not a breach of warranty increased the hazard is a question of fact or otherwise a jury question.

It is not a question of fact. It is not a jury question. It is a question of law for the Court to decide on summary judgment.

Therefore, in view of what seems to be this Court's own stated recognition of this basic and essential fact, *i.e.*, that it is the

province of this Court to state whether as a matter of law the acts constituting the breach of the Named Operator Warranty increased the hazard of the November 3, 2007 incident in which the vessel struck some rocks or other underwater obstruction, the undersigned counsel for Plaintiff respectfully asks that the Court reconsider its July 31, 2009 Order and enter summary judgment. Plaintiff's counsel respectfully submits that there is no issue remaining for trial, as absolutely no issue or matter remaining in dispute such that a trial is required in order to resolve such an unspecified but allegedly still abiding factual dispute.

WHEREFORE, Plaintiff prays that the Court will reconsider its Order of July 31, 2009 and will enter its Order awarding summary judgment, or in the alternative, that the Court will clarify the said Order, along with all such other and further relief as the Court may deem proper in the premises.

Dated:   August 3, 2009
         Fort Lauderdale, Florida

                                    GOLDMAN & HELLMAN
                                    Attorneys for Plaintiff
                                    800 S.E. 3rd Avenue
                                    4th Floor
                                    Fort Lauderdale, Florida 33316
                                    Tel (954) 356-0460
                                    Fax (954) 832-0878

                                    By:   /s/ Steven E. Goldman
                                          STEVEN E. GOLDMAN, ESQ.
                                          FLA. BAR NO. 345210

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on August 3, 2009 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to each of the following:

James W. Beagle, Esq.
3550 N.W. 9th Avenue, Suite A
Fort Lauderdale, FL 33309

                              GOLDMAN & HELLMAN
                              Attorneys for Plaintiff
                              800 S.E. 3rd Avenue
                              4th Floor
                              Fort Lauderdale, Florida 33316
                              (954)356-0460


                        By:   /s/ Steven E. Goldman
                              STEVEN E. GOLDMAN, ESQ.
                              FLA. BAR NO. 345210