```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
                     IN ADMIRALTY
```

GREAT LAKES REINSURANCE
(UK)PLC,

    Plaintiff,

vs.                              CASE NO. 08-CIV-60399-JORDAN

ELAINE Y. ROSIN, *et al*,        Magistrate Judge McAliley

    Defendants.
_____/

## **PLAINTIFF'S TRIAL BRIEF**

COMES NOW the Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, by and through its undersigned attorneys, and files this its Trial Brief:

The legal and factual issues before this Court have been extensively reviewed, briefed and analyzed, as summary judgment motions have been submitted on behalf of both the Plaintiff and the Defendant. A brief bench trial will now ensue in which these issues will be presented to the Court for final resolution.

On January 10, 2007, the Defendant signed an application for marine insurance which was submitted via her brokers at USI Florida/Kolisch Insurance to T.L. Dallas (Special Risks) Ltd., the Plaintiff's UK-based marine underwriting agent. The material facts required by the underwriter in order to calculate the risk, and determine whether and on what terms to issue a policy, were all set forth in that signed application.

Elaine Y. Rosin was identified as a medical doctor who was the sole owner ***and the sole operator*** of a 2003 36 ft Doral power vessel which she had purchased for $260,000.00 and which was said to have an insured value of $175,000.00. The Defendant was represented as having 25 years of experience in both the ownership and the operation of watercraft, with only a single minor loss in 2005 related to the passage of Hurricane Wilma. The Defendant represented that she had attended classes sponsored by the Pompano Power Squadron, and she reported no history whatsoever of violations, suspensions or convictions.

USI Florida/Kolisch Insurance had been assisting the Defendant as her marine insurance broker ever since she had purchased the vessel back in 2003, having obtained coverage for the vessel from Safeco Insurance Company. It was only when Safeco advised the Defendant that it would not be offering to renew the existing coverage that Kolisch made the decision to approach TLD's facility in order to seek a policy from Great Lakes Re.

Because it deals directly with members of the public such as the Defendant, Kolisch is what is termed a "retail broker" and the evidence at trial will demonstrate that Kolisch acted at all times as the agent for the Defendant, with no authority to bind or take any other action on behalf of the Plaintiff marine insurance company. The evidence at trial will establish that Kolisch was

fully aware at all times of the existence and the meaning of all of the relevant provisions in the policy and in the application form.

The testimony at trial from the Plaintiff's underwriter, B.A. Usher, will establish that the underwriting decision was impacted by the material facts as these were set forth on the application form signed by the Defendant on January 10, 2007. Most critically for purposes of this litigation, the evidence at trial will establish that the assurance in the application that the vessel would be operated solely by the Defendant was such a material fact.

Satisfied by the material facts set forth on the application, TLD issued a Quotation to Kolisch which the latter accepted on February 8, 2007 by sending a request to bind on those terms which had been set forth in the Quotation. A Cover Note for Policy No. 200/658/91059 was issued to Kolisch.

The policy of marine insurance issued by the Plaintiff to the Defendant contained a provision commonly termed a "Named Operator Warranty," stating "[i]t is warranted that the scheduled vessel will be operated only by covered persons." The DEFINITIONS section of the policy defines "covered person" as "mean[ing] you, or any person detailed on your application form which has been submitted and approved by us."

The policy also contains the following verbiage which has the effect of directly incorporating onto the policy the well

established federal admiralty law principle of *uberimmae fidei*, or "utmost good faith":

> This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance.

The policy also contains a Choice of Law clause calling for this and every other coverage dispute to be resolved by having reference to established principles of federal admiralty law, or to New York state law in the event that no such established principle of federal admiralty law exists with regard to a particular subject or issue. As stated, *supra*, the evidence at trial will establish that Kolisch was fully aware at all times of the existence and the meaning of all of the relevant provisions in the policy.

Although the Defendant is registered to vote in Ohio, carries an Ohio driver's license and is licensed to practice medicine only in Ohio and Kentucky, her 2003 36 ft Doral vessel was kept moored at the Boca Raton Yacht & Racquet Club, where the Defendant has purchased a condominium unit. At some point prior to November 3, 2007, the Defendant decided to have the vessel's bottom painted and inj order to have this apparently urgent situation attended to, she asked her son, Paul Rosin, to bring the vessel to Govan Marine in Fort Lauderdale where the work was going to be done.

Paul Rosin brought the vessel from the marina in Boca Raton to his (leased) home in Dania, where he kept it moored for several days at a dock located at the rear of the property. On Saturday, November 3, 2007, Paul Rosin navigated the vessel the approximately four (4) miles from his residence to Govan Marina located at 2200 Marina Bay Drive in Fort Lauderdale, traveling west through the Dania Cut-Off canal and then turning north into the South New River Canal. Paul Rosin brought his girlfriend. Kiffeny Arredondo, along with him for the ride.

Somewhere between 6:30 p.m. and 6:45 p.m., at a point approximately 100 yards away from Govan Marina, in the canal, with Paul Rosin at the helm, the vessel struck rocks or some other underwater obstruction, sustaining damage which caused the vessel to quickly sink at the dock where Mr. Rosin had secured it.

In March 2002, Paul Rosin had been sentenced by a state court in Ohio to a year of probation and a fine for reckless operation of a watercraft.

Paul Rosin has never taken any course(s) on boating safety or the safe operation of a vessel, such as the course listed by the Defendant on her application for marine insurance.

Although Paul Rosin had operated the 2003 36 ft Doral previously, he had never before operated the vessel in the waterway where the incident of November 3, 2007 took place.

On November 9, 2007, Paul Rosin willingly provided a statement to the Plaintiff's investigator in which he boasted of being "very familiar" with the Defendant's vessel as a result of having previously operated that vessel 40 or 50 times. However, on January 12, 2009 Paul Rosin gave a deposition in which he admitted lying to Plaintiff's investigator with regard to his experience with the operation of the 2003 36 ft Doral vessel. At his deposition and under oath, Paul Rosin stated that he had operated the vessel only 3 or 4 times previously, and pronounced himself only "familiar" with the vessel rather than "very familiar."

As noted, Elaine Y. Rosin was identified as a medical doctor who was the sole owner ***and the sole operator*** of a 2003 36 ft Doral power vessel which she had purchased for $260,000.00 and which was said to have an insured value of $175,000.00. The application which she signed required disclosure of all operators, and yet nowhere does the name of Paul Rosin appear. The evidence will illustrate that Paul Rosin resides in South Florida and in his own (unsworn) statement had operated the insured vessel 40 or 50 times. Even the Defendant will acknowledge at trial that she had allowed Paul Rosin to operate the vessel on a number of previous occasions in order to have repair or maintenance work done. Despite the self-evident fact that Paul Rosin had operated the vessel, the Defendant failed to disclose this material fact on the application. Plaintiff's

6

underwriter will describe for the Court why this non-disclosure was material and why it therefore voids the coverage under the federal admiralty law doctrine of *uberimmae fidie* or "utmost good faith," which applies to this litigation under the authority of the 11th Circuit's ruling in the case of *HIH Marine Services, Inc. v. Fraser*, 2000 A.M.C. 1817 (11th Cir. 2000).

Plaintiff will continue to insist at trial that there exists a well entrenched, established rule of federal admiralty law according to which the self-evident breach of the Named Operator Warranty voids the coverage afforded under the policy of marine insurance. The apposite cases have been cited to this Court *ad nauseum* and *seriatum* and these cases will not be reviewed again herein.

Plaintiff will continue to insist at trial that this Court should concede and accept the validity of the Choice of Law clause contained in the policy, and again will refrain from citing to this Court those numerous cases which been reviewed herein *ad nauseum* and *seriatum*. However, it bears emphasis that the case of *Great Lakes Reinsurance (UK) plc v. Southern Marine Concepts, Inc.*, 2009 A.M.C. 1093 (S.D. Tex. 2008), ignored or even rejected by this Court as authoritative on this subject, has now been reported. In addition, another case has now been decided, by another federal district court, approving this particular Choice of Law provision.

In the case of *Great Lakes Reinsurance v. Sea Cat I, LLC*,

2009 WL 2778754, ___ F.Supp.2d ___ (W.D. Okla. 2009), decided one month ago, Plaintiff's Choice of Law clause was closely analyzed, and the Choice of Law clause was expressly approved and relied upon, in order to award a (partial) summary judgment to Great Lakes Re on various counts set forth in the insured's counterclaim.

The court in Oklahoma noted that where admiralty jurisdiction exists, "federal law governs the enforceability of the choice-of-law provision." *Id.,* at ___, noting also that "[u]nder federal law, the policy's choice-of-law provision is prima facie valid and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Id.* The court in Oklahoma rejected the usual objections from the insured that it had no notice of the Choice of Law clause, and that the policy of marine insurance was that most evil article, a contract of adhesion. The fact that Great Lakes Re is a UK-based surplus lines insurer that has a service agent in New York was yet again persuasive in convincing the Oklahoma court to choose New York state law to resolve the disputed issues.

Most crucially, the court in Oklahoma also rejected the insured's contention that enforcing the Choice of Law clause would violate Oklahoma public policy, noting that although a provision of the state Insurance Code expressly prohibits any insurance policy

8

from containing a Choice of Law clause which selects the law of a foreign forum, another provision expressly exempts policies of marine insurance from the prohibition against foreign law. It bears emphasis that Florida state law contains no prohibition against inclusion of a Choice of Law clause in any policy of insurance, whether marine or non-marine, and it is absurd for this Court to accept the Defendant's self-serving argument that any illusory public policy goal is attained by failing to enforce a carefully crafted Choice of Law clause which has been held valid by several district courts and by the United States Court of Appeals for the Third Circuit.

    Finally, the Plaintiff will continue to insist at trial that this Court should concede that the evidence clearly establishes that operation of the vessel by Paul Rosin, in breach of the Named Operator Warranty, increased the hazard and therefore voids coverage under the terms of the Florida state statute which even Defendant's counsel calls upon this Court to refer to in order to resolve the coverage dispute. As noted above, Paul Rosin has a documented history of reckless operation of a watercraft; Unlike Elaine Rosin, Paul Rosin has never completed any approved or recognized course teaching safe boating operation; By his own admission Paul Rosin had operated the vessel on no more than perhaps three or four prior occasions, and never before in the particular waterway where the vessel came to grief.

It is not Plaintiff's burden to demonstrate that operation by Paul Rosin caused the incident that occurred between 6:30 and 6:45 p.m. on November 3, 2007. It is not Plaintiff's burden to establish at trial that a direct causal relationship exists between operation by Paul Rosin and the incident that occurred between 6:30 and 6:45 p.m. on November 3, 2007. In order to prevail under Florida state law, all Plaintiff must show this Court, by a greater weight of the evidence, operation by Paul Rosin increased the hazard of the event that occurred on that date. That evidence is overwhelming and will result in Judgment for the Plaintiff.

Dated:   October 5, 2009
         Fort Lauderdale, Florida

          GOLDMAN & HELLMAN
          Attorneys for Plaintiff
          800 S.E. 3rd Avenue
          4th Floor
          Fort Lauderdale, Florida 33316
          (954)356-0460

          By:   /s/ Steven E. Goldman
                STEVEN E. GOLDMAN, ESQ.
                FLA. BAR NO. 345210

<u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that on October 5, 2009 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to each of the following:

James W. Beagle, Esq.
3550 N.W. 9th Avenue, Suite A
Fort Lauderdale, FL 33309

                        GOLDMAN & HELLMAN
                        Attorneys for Plaintiff
                        800 S.E. 3rd Avenue
                        4th Floor
                        Fort Lauderdale, Florida 33316
                        (954)356-0460


By:   /s/ Steven E. Goldman
       STEVEN E. GOLDMAN, ESQ.
       FLA. BAR NO. 345210